**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alison York, | No. CV-18-04039-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| JPMorgan Chase Bank, National Association, et al., | |
| Defendants. | |

Before the Court are Defendants' Motion to Dismiss (Doc. 22), Plaintiff's Response (Doc. 25), and Defendants' Reply (Doc. 26). For the following reasons, the motion will be granted.

## I. Background[1]

### A. Factual Background

On March 24, 2018, Plaintiff Alison York ("Plaintiff") went to the drive-through window at the Peoria, Arizona branch location of Defendant JPMorgan Chase Bank ("Chase"). (Doc. 1 ¶ 12.) Plaintiff and Chase were parties to a Deposit Account Agreement (the "Agreement"), which is the governing contract in this case.[2] (Doc. 22-2.) Plaintiff, an

---

[1] The following facts are drawn in the Plaintiff's favor.

[2] Because this claim relies on the existence of a contract, and Plaintiff does not dispute the authenticity of the Deposit Account Agreement, the Court will consider the agreement to be incorporated by reference into the Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (extending "incorporation by reference" doctrine to instances where "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document").

In addition to the Agreement, Plaintiff's Response alleges that Defendants' Motion

African-American woman who was "dressed in her dress that she does not wear in public and with her hair covered in an African-style head wrap" at the time of this interaction, wanted to make credit card payments and to withdraw $1800 in cash. (Doc. 1 ¶¶ 1, 12.) Plaintiff gave Defendant Karen Anliker ("Anliker"), the branch's head teller, Plaintiff's Chase Slate credit card, her Arizona driver's license, and a withdrawal slip with both her mailing and billing addresses. (Doc. 1 ¶¶ 13−14.) Anliker asked Plaintiff what she wanted to do, and Plaintiff replied, "I would like to make payments to my [two] accounts and [make] a withdrawal." (Doc. 1 ¶¶ 12, 14.) Anliker then left the drive-through window, and after Plaintiff waited about twenty minutes, Defendant Cullen Keller ("Keller"), the acting branch manager, asked Plaintiff to come inside to verify her identity. (Doc. 1 ¶ 14.)

Inside the branch, Keller ushered Plaintiff over to his desk and asked Plaintiff what she wanted to do. (Doc. 1 ¶ 15.) Plaintiff provided Keller with her driver's license and Chase Slate credit card and told Keller she wanted to make payments on her credit cards and take out $1800 in cash. (Doc. 1 ¶ 15.) Keller informed Plaintiff of the amounts due on her two credit cards (a Freedom card and the Slate card) and proceeded to make the payments for Plaintiff by transferring money from her checking account to her credit cards. (Doc. 1 ¶ 15.) Because Keller told Plaintiff that she would need to see a teller for the cash withdrawal, Plaintiff "walked up to [Anliker] and asked for the $1800 withdrawal." (Doc. 1 ¶ 16.) At some point during their encounter, Anliker told Plaintiff that "[she] ha[d] never seen [Plaintiff] at this branch before." (Doc. 1 ¶ 16.) Having still not received her money, Plaintiff returned to Keller, who printed Plaintiff's signature card and brought it back to Anliker. (Doc. 1 ¶¶ 16−17.) Despite now having Plaintiff's signature card, which Keller had verified matched Plaintiff's signature on her driver's license, Anliker repeatedly told

to Dismiss offers facts extrinsic to Plaintiff's Complaint. (Doc. 25 at 3−4.) However, regardless of whether the facts can be properly inferred from the Complaint, the Court is not considering the allegedly extrinsic facts. Thus, Defendants' Motion to Dismiss need not be treated as a motion for summary judgment. *See Keams v. Tempe Tech. Inst.*, 110 F.3d 44, 46 (9th Cir. 1996) (stating that "[A] 12(b)(6) motion need not be converted into a motion for summary judgment when matters outside the pleading are introduced, provided that 'nothing in the record suggests reliance' on those extraneous materials.") (citation omitted).

Plaintiff that "she did not feel comfortable" giving Plaintiff her money and that she "had the right to refuse service." (Doc. 1 ¶ 16−17.) Anliker also told Keller, while Plaintiff was standing at the teller station, that Plaintiff needed to "go to another branch." (Doc. 1 ¶ 17.) During this interaction, Plaintiff accidentally knocked something off the counter, and Anliker raised her voice at Plaintiff and accused her of throwing things. (Doc. 1 ¶ 17.)

Plaintiff and Keller returned to Keller's desk, and he apologized for Anliker's behavior. (Doc. 1 ¶¶ 18−19.) He told Plaintiff that, though he wanted to help her, he could not override Anliker's decision. (Doc. 1 ¶ 19.) He did inform Plaintiff, however, that Anliker would never treat a customer in that manner again. (Doc. 1 ¶¶ 18−19.) Keller told Plaintiff that she "did not know how many people came into the bank with fraud and that that someone had just stolen $4,500 from the Bank." (Doc. 1 ¶ 18−19.) He printed a copy of Plaintiff's driver's license and a "verification guide" for Plaintiff but informed her that company policy forbade her from having a copy of her signature card, which Plaintiff alleges was a lie. (Doc. 1 ¶ 18.) Keller then told Plaintiff to return to Anliker, who, at that point, completed Plaintiff's $1800 withdrawal. (Doc. 1 ¶ 20.) Plaintiff told Anliker that she was "completely out of line" and that "all [Anliker] had to do was go and look into the computer" to verify her identity. (Doc. 1 ¶ 20.) Anliker responded that Plaintiff's information was "not in the computer," which Plaintiff alleges was another lie. (Doc. 1 ¶ 20.) By the end of the interaction, Plaintiff had spent more than an hour at the bank. (Doc. 1 ¶ 20.)

### B.    Procedural Background

On November 12, 2018, Plaintiff filed her Complaint against Defendants for racial discrimination under 42 U.S.C. section 1981 and A.R.S. section 41-1442, conversion, and intentional infliction of emotional distress ("IIED"). (Doc. 1.) On January 4, 2019, Defendants filed this Motion to Dismiss. (Doc. 22.) On January 22, 2019, Plaintiff filed her Response.[3] (Doc. 25.) On January 29, 2019, Defendants filed their Reply. (Doc. 26.)

---

[3] The Court acknowledges Defendants' argument as to the untimeliness of Plaintiff's Response. (Doc. 26 at 1.) However, the Court declines to strike Plaintiff's Response and will address the motion on its merits.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In reviewing a complaint for failure to state a claim, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031−32 (9th Cir. 2008)). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, *id.*, and "are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). Likewise, the court need not accept legal conclusions as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

A court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: (1) lack of a cognizable legal theory and (2) insufficient facts alleged under a cognizable legal theory. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III.    Analysis

### A.    Discrimination in the making of a contract

The Civil Rights Act protects the rights of racial minorities to, among other things, "make and enforce contracts," defined by the statute as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a). When racial discrimination impairs a contract, section 1981 entitles a plaintiff who has rights under the contract to relief. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "In order to evaluate claims of intentional discrimination where intent itself is generally impossible to prove, [the courts in this Circuit] appl[y] the *McDonnell* burden-shifting framework," which requires that a plaintiff first establish a *prima facie* case of racial discrimination. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). To establish a *prima facie* section 1981 claim, the plaintiff must show that "(1) [she] is a member of a protected class, (2) [she] attempted to contract for certain services, (3) [she] was denied the right to contract for those services, and (4) such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class." *Childs v. Boyd Gaming Corp.*, No. 2-18-CV-00316-GMN-VCF, 2018 WL 4333945, at *4 (D. Nev. Sept. 11, 2018) (internal quotations omitted).[4] Moreover, the plaintiff must plausibly show the defendant's discrimination was intentional. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989); *see also Gen. Bldg. Contractors Ass'n v. Pennsylvania.*, 458 U.S. 375, 391 (1982).

There is no dispute that the first element is met. Plaintiff is African-American. There also appears to be no dispute over the second element. The alleged discrimination

---

[4] Some courts have used a different standard for section 1981 claims, finding that the statute is violated if: "(1) plaintiff is a member of a racial minority; (2) defendant intentionally discriminated against plaintiff because of his or her race; and (3) the discrimination involved the making or enforcing of a contract." *Allen v. U.S. Bancorp*, 264 F. Supp. 2d 945, 948 (D. Or. 2003). However, the Court finds that the greater weight of Ninth Circuit authority supports the use of elements stated in *Childs v. Boyd Gaming Corp.*, No. 2-18-CV-00316-GMN-VCF, 2018 WL 4333945, at *4 (D. Nev. Sept. 11, 2018). *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144−45 (9th Cir. 2006).

concerned the banking contract between the parties. Thus, the Court will focus on whether Plaintiff has satisfied the third element of denial of the right to contract and the fourth element of whether Chase's services remained available to similarly-situated individuals who were not African-American. The Court will also address whether the alleged discrimination was intentional.

*Denial of the Right to Contract.* To meet the third element of a section 1981 claim, the alleged discrimination must result in the actual loss of a contract interest. *Jeffery v. Home Depot U.S.A., Inc.*, 90 F. Supp. 2d 1066, 1069 (S.D. Cal. 2000). In other words, the statute is not violated if a plaintiff is not deprived of the right to make and enforce a contract. *Id.* Plaintiff asserts that Defendants interfered with her contractual rights because Defendants "thwarted [Plaintiff's] right to make a contract." (Doc. 1 ¶ 25.) She further argues that she "made a contract for the Bank to keep her money on deposit to be withdrawn at her request." (Doc. 25 at 5.) Under the terms of the Agreement between Plaintiff and Chase, Chase retained the right to require identification it deemed acceptable before allowing a withdrawal; to place reasonable restrictions on large cash withdrawals; and to refuse a transaction if it suspected fraud. (Doc. 22-2 at 7, 8, 17.)

Courts have repeatedly held that there is no actual loss of a contract interest if a customer is ultimately served, even if there is a delay based on racial discrimination. For example, in *Lopez v. Target Corp.*, a Hispanic plaintiff alleged that a Caucasian cashier twice told him that her checkout line was closed to him, then continued to help Caucasian customers while making rude comments and gestures towards him. 676 F.3d 1230, 1231−32 (11th Cir. 2012). The plaintiff was eventually able to complete his purchase with a different cashier. *Id.* at 1232. The Eleventh Circuit affirmed that the plaintiff had failed to state a claim under section 1981. *Id.* at 1234. The court reasoned that, even if he was delayed and mistreated based on his race, the plaintiff was able to complete his transaction at the same store at the same price using the same methods as other customers. *Id.* Thus, he was not denied the ability to make or enforce a contract nor had he suffered an actual loss of a contract interest. *Id.* at 1234; *see also Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th

Cir. 2003) (affirming that a Hispanic plaintiff could not establish interference with an actual contract interest when she was required to show identification in order to use her credit card to make a purchase because she received all she was entitled to under the retail contract); *Jeffery*, 90 F. Supp. 2d 1066, 1069 (S.D. Cal. 2000) (granting summary judgment to the defendant when a cashier asked to search the African-American plaintiff's bag prior to completing his transaction because "claims of delayed service do not rise to the level of interference with a contract sufficient to grant relief under [section] 1981"). Likewise, here, Plaintiff suffered no actual loss of a contract interest. Although she alleges delay and mistreatment due to her race, she ultimately received all that she was entitled to under her contractual relationship with Chase. Accordingly, the Court finds that Plaintiff's Complaint fails to plausibly satisfy the third element of a section 1981 claim.

*Similarly-Situated Individuals.* The fourth element of a section 1981 claim requires a showing that the services for which the plaintiff attempted to contract remained available to those who were not members of the plaintiff's protected class. *Childs*, 2018 WL 4333945, at *4. Here, Plaintiff alleges that Caucasian customers were not subjected to the same treatment Plaintiff encountered while she was at the bank. (Doc. 1 ¶ 21.) Though this statement is conclusory on its own, other courts have found this allegation sufficient in the discrimination context when other facts support the plausible inference that such other individuals were not treated similarly. *See Nganje v. CVS Rx Servs.*, 13-CV-2327-HRH, 2014 WL 545354, at *7−8 (D. Ariz. 2014). Such is the case here. Plaintiff alleges that the bank was full of other customers. (Doc. 1 ¶ 17.) Moreover, Defendant concedes that there were many customers in the bank but incorrectly argues that "Plaintiff's Complaint concedes that … there was only one Teller on duty." (Doc. 22 at 2.) Plaintiff's Complaint does not so allege. Even if the Court were to consider this fact, however, it would actually support the inference here. Thus, the Court finds that it is plausible that other non-African-American similarly-situated individuals at the bank that day were not subjected to this type of treatment for a cash withdrawal. Accordingly, Plaintiff has sufficiently pled this element.

*Intentional Discrimination.* In addition to the elements above, the Ninth Circuit requires a section 1981 plaintiff to show intentional discrimination by the defendant. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). Here, Plaintiff is an African-American woman who was wearing an African-style headwrap. Plaintiff provided her valid driver's license and both her mailing and billing addresses, in person, at the drive-through window, along with her Chase Slate credit card. Though offering such identification, she followed Keller's instructions and went into the bank, where, eventually, her signature card—which matched her driver's license signature—was provided to Anliker from Keller, the branch manager. Moreover, Keller told Plaintiff the amounts due on her two credit cards and proceeded to make her two credit card payments. Further, whether Plaintiff provided both her billing and mailing addresses does not require or even more plausibly insinuate that her identity should have been questioned. Indeed, she provided her Chase Slate credit card, which requires a billing address. In fact, it is arguably more plausible to infer that Plaintiff was providing an abundance of identifying information. But, regardless, this argument goes to the merits of this case. In sum, it is unclear to the Court what additional identification Defendants wanted from Plaintiff or on what grounds they may have suspected fraud. Indeed, Plaintiff provided many forms of identification. Additionally, as the events unfolded, Anliker treated Plaintiff rudely. Plaintiff also alleges that Caucasian customers were not treated in the same manner while Plaintiff was at the bank. Taking these facts together, the Court can plausibly infer that Defendants intentionally discriminated against Plaintiff due to her race.

Accordingly, though Plaintiff has sufficiently alleged element four and Defendant's intent, she ultimately fails to state a claim for relief under section 1981 because she has not shown that she was denied any actual loss of a contract interest.

## B.    Discrimination in a place of public accommodation

Under the Arizona Civil Rights Act:

"No person, directly or indirectly, shall refuse to, withhold from or deny to any person, nor aid in or incite the refusal to deny or withhold, accommodations, advantages, facilities or privileges thereof because of race

> . . . nor shall distinction be made with respect to any person based on race . . .
> in connection with the price or quality of any item, goods or services offered
> by or at any place of public accommodation."

A.R.S. § 41-1442(B). "Places of public accommodation" include "all establishments which cater or offer their services . . . to or solicit patronage from members of the general public." A.R.S. § 41-1441. Though there is minimal case law construing this statute, Arizona courts have previously held that the requisite standard for discrimination under the statute is the same as that of section 1981, *Lopez v. Cheesecake Factory*, 2016 Ariz. Super. LEXIS 654, at \*6 (Super. Ct. Ariz. Jan. 26, 2016),[5] and that a delay in service does not violate the statute, *Lopez v. Lowe's HIW Inc.*, 2012 Ariz. Super. LEXIS 387, at \*5 (Super. Ct. Ariz. Oct. 3, 2012). In *Lopez v. Lowe's*, a Hispanic plaintiff alleged that while he was waiting in line to buy supplies, an employee helped white customers first and told another employee to do the same. *Id.*, at \*1. The court granted the defendant's motion to dismiss for failure to state a claim under A.R.S. section 41-1442(B) because the statute prohibits refusal and denial of service, but not delay. *Id.*, at \*5. Following that holding, Plaintiff's claim fails on the same grounds.

Furthermore, A.R.S. section 41-1442, the Arizona Civil Rights Act, is very similar to 42 U.S.C. section 2000a, the federal Civil Rights Act of 1964. In construing other sections of the Arizona Civil Rights Act that are analogous to sections of the Civil Rights Act of 1964, Arizona courts have found the federal courts' construction of the federal statute persuasive. *Civil Rights Div. of Ariz. Dep't of Law v. Superior Court In and For Pima Cty.*, 706 P.2d 745, 750 (Ariz. Ct. App. 1985); *Ariz. Civil Rights Div., Dep't of Law v. Olson*, 643 P.2d 723, 727 n.2 (Ariz. Ct. App. 1982). To succeed on a claim under 42 U.S.C. section 2000a, a plaintiff must show that she:

---

[5] Plaintiff cites *Lopez v. Cheesecake Factory* for the proposition that a section 1981 claim and a claim under A.R.S. section 41-1442(B) are proven identically. (Doc. 25 at 3.) This is incorrect. Rather, *Lopez v. Cheesecake Factory* says that the *discrimination elements* of the claims are proven identically. 2016 Ariz. Super. LEXIS 654, at \*6 (Super. Ct. Ariz. Jan. 26, 2016).

"(1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodations; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class."

*Brown v. Luxor Hotel & Casino*, 2014 WL 2858488, at *2 (D. Nev. June 23, 2014) (citing *United States v. Lansdowne Swim Club*, 894 F.2d 83, 88 (3d Cir. 1990)). Because the federal courts' construction of the Civil Rights Act of 1964 has been persuasive to the Arizona courts in the past and these elements are consistent with the Arizona courts' limited analysis of A.R.S. section 41-1442, the Court finds these elements persuasive in the instant case.[6]

Like the section 1981 claim, the first and second elements are not disputed for this claim. Additionally, because the discrimination element is proven identically to the section 1981 claim, the fourth element is met. As to the third element, federal courts have reached the same finding as the *Lopez v. Lowe's* court, requiring a plaintiff to show a denial of service rather than a delay in order to state a claim under section 2000a. *Jeffery*, 90 F. Supp. 2d at 1070. Accordingly, the Court finds that Plaintiff has failed to state a claim under A.R.S. section 41-1442(B).

## C.    Common law conversion

Arizona defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Universal Mktg. & Entm't v. Bank One of Ariz., N.A.*, 53 P.3d 191, 193 (Ariz. Ct. App. 2002) (quoting Restatement (Second) of Torts § 222A(1) (1965)). To succeed on a conversion claim, a plaintiff must have had "the right to immediate possession of the chattel at the time of the alleged conversion." *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990). Generally, a bank and a depositor have a debtor-creditor

---

[6] Although the Court uses the elements of a section 2000a claim to analyze Plaintiff's claim under A.R.S. section 41-1442(B), Plaintiff has not asserted a section 2000a claim.

relationship, meaning the bank has the right to possess deposited money and the depositor cannot claim conversion. *In re Cent. Bank*, 205 P. 915, 917 (Ariz. 1922); *Sports Imaging of Ariz., L.L.C. v. 1993 CKC Tr.*, 2008 WL 4448063, at *15 n.23 (Ariz. Ct. App. Sept. 30, 2008). In other words, "A conversion claim cannot be used merely to enforce a debt that may be discharged by the payment of money generally." *Sports Imaging*, 2008 WL 4448063, at *14. However, "[M]oney can be the subject of a conversion claim if it can be described, identified, or segregated, and an obligation to treat it in a specific manner is established." *Id.*

Plaintiff relies on *Sports Imaging* to argue that this case is one in which she had an immediate right to her money because she presented identification in conformity with the Agreement, and Defendants subsequently withheld the money from her. (Doc. 25 at 7.) However, such reliance on that case is misplaced. *Sports Imaging* makes clear that this case is not one where a plaintiff designated money in a separate account, which was to be used for a particular purpose. 2008 WL 4448063, at *14; *see Murphy v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 10-01391-PHX-ROS, 2010 WL 11405084, at *5 (D. Ariz. Nov. 4, 2010). Instead, this case is the type of case the court refers to as a "mere creditor-debtor" situation. *Sports Imaging*, 2008 WL 4448063, at *14. Plaintiff is the creditor of debtor Chase because Plaintiff deposited funds with Chase. At that point, Chase, the debtor, was granted title to those funds, and Plaintiff became the creditor. Thus, Plaintiff is alleging that Defendants "converted [Plaintiff's] funds by failing to pay a debt they owed to [her]" when she sought to withdraw her $1800 but Anliker initially refused to give Plaintiff her money. *Id.* Plaintiff is not alleging that she deposited funds in a specific account for a specific purpose, either before or on the day at issue, and that Defendants failed to give her her money in accordance with such specific purpose. Therefore, this case "involve[s] a claim against a debtor for conversion of the funds representing the indebtedness." *Id.* Thus, there can be no claim for conversion. Accordingly, the Court finds that Plaintiff has failed to properly state a conversion claim.

### D. Intentional Infliction of Emotional Distress

In Arizona, a claim for IIED requires three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Courts should determine "whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief." *Patton v. First Fed. Sav. & Loan Ass'n*, 578 P.2d 152, 155 (Ariz. 1978) (citation omitted). The defendant's conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 500 (Ariz. Ct. App. 1982) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Plaintiff alleges the following actions by Defendants in support of her claim: (1) Defendants deprived her of her money after she showed identification; (2) Defendant Anliker told her to go to another branch because Defendant was "not comfortable" completing Plaintiff's cash withdrawal; (3) Defendants Anliker and Keller lied to cover up discrimination; and (4) Defendant Anliker raised her voice and accused Plaintiff of throwing things, all of which were allegedly done because Plaintiff is African-American. (Doc. 25 at 6.) Taking these allegations as true, as the Court must, Defendants' actions were not so outrageous as to be utterly intolerable. *Morgan v. Freightliner of Arizona, LLC*, No. CV 16-498-TUC-CKJ, 2017 WL 2423491, at *10 (D. Ariz. June 5, 2017) (discussing various cases alleging racial and sexual discrimination based on even worse behavior than that allegedly engaged in by Defendants here and finding that the allegations there did not suffice to withstand a motion to dismiss).

Plaintiff cites to *Coffin v. Safeway, Inc.*, (Doc. 25 at 6), to support her IIED claim, but that case actually emphasizes the insufficiency of Plaintiff's Complaint. 323 F. Supp. 2d 997 (D. Ariz. 2004). In *Coffin*, the plaintiff alleged that she was subjected to repeated and continuous sexual harassment by her manager for eight months. *Id.* at 1003−04. The plaintiff alleged that the manager sought sexual favors and made frequent sexual comments, sounds, and gestures toward her. *Id.* at 999. The court held that these facts were sufficient to withstand the defendant's motion to dismiss the plaintiff's IIED claim. *Id.* at 1004. In contrast, in *Morgan*, one plaintiff, a woman over the age of 40, alleged that her supervisor engaged in sex and age discrimination by giving her inaccurate reviews that negatively affected her pay, assigning her undesirable shifts, and requiring her to work more than 80 hours per week at times. 2017 WL 2423491, at *1−3. The other plaintiff in that case, a Hispanic man of Mexican origin, alleged that the same supervisor discriminated against him based on race, color, and national origin through similar acts. *Id.*, at *1, 3. The court held that neither plaintiff alleged behavior by the supervisor that met the "extreme and outrageous" requirement. *Id.*, at *10.

Both the *Coffin* and *Morgan* courts addressed the difficulty of assessing discrimination in the context of an IIED claim. *See Morgan*, 2017 WL 2423491, at *9−11; *Coffin*, 323 F. Supp. 2d at 1004. Ultimately, the courts concluded that repeated acts of alleged discrimination, in conjunction with the degree of outrageousness, which varies by case, are a strong indication of whether a plaintiff's allegations will withstand a motion to dismiss. *See id*. Plaintiff's claim here does not meet the mark discussed in either *Coffin* or *Morgan* nor the cases those courts analyze. Instead, Plaintiff alleges an isolated incident in which she was subjected to rude comments and a delay in service. The fact that Defendants may have based their decision to make rude comments and delay service to Plaintiff on the day at issue because she is African-American, which the Court must credit, does not, by itself, appear to withstand a claim for IIED, at least under these facts. Thus, the Court finds that Plaintiff has failed to state a claim for IIED.

# IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is granted. However, Plaintiff may file a new amended complaint if she can plead sufficient facts to establish that Defendants may be liable to Plaintiff. *See* Fed. R. Civ. P. 15(a)(2) (stating that a court "should freely give leave [to amend] when justice so requires."). If Plaintiff elects to do so, she has until August 30, 2019 to file an amended complaint.

Accordingly,

**IT IS ORDERED:**

1. That Defendants' Motion to Dismiss (Doc. 22) is **granted**.

2. That Plaintiffs' Complaint is **dismissed without prejudice**;

3. That Plaintiffs have until **August 30, 2019** to file an amended complaint; and

4. That Defendants have **three weeks** from the date Plaintiff files an amended complaint to file responsive pleadings.

Dated this 12th day of August, 2019.

Honorable Steven P. Logan
United States District Judge