**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alison York,<br><br>    Plaintiff,<br>vs.<br><br>JPMorgan Chase Bank, N.A., et al.,<br><br>    Defendants. | No. CV-18-04039-PHX-SPL<br><br>**ORDER** |

  Before the Court is Defendants JP Morgan Chase Bank, N.A. ("Chase"), Bank Teller, Karen Anliker ("Anliker"), and her husband, Mark Anliker, and Acting Branch Manager, Cullen Keller's ("Keller," and collectively with Chase and Anliker, the "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") (Doc. 35), which is fully briefed. For the reasons that follow, the Motion will be granted with prejudice.[1]

**I. Background**

  Plaintiff Alison York ("York") filed this action on November 12, 2018. (Doc. 1) The initial complaint contained four counts: (1) discrimination in the making of a contract, (2) discrimination in a place of public accommodation, (3) common law conversion, and (4) intentional infliction of emotional distress. (Doc. 1 at 2) Defendants filed a motion to

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See L.R. Civ. 7.2(f); Fed. R. Civ. P. 78(b); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

dismiss (Doc. 22) which the Court granted (Doc. 27). The Court dismissed all four claims and gave Plaintiff an opportunity to amend her complaint. On August 30, 2019, Plaintiff timely filed her first amended complaint, which contained two counts: (1) violation of 42 U.S.C. § 1985(3) conspiracy by private individuals to violate civil rights, and (2) breach of the covenant of good faith and fair dealing. (Doc. 28) The parties met and conferred as required prior to the filing of any Rule 12(b) motion and they stipulated that Plaintiff could amend her first amended complaint to cure the deficiencies on her first count and dismiss her second count. (Docs. 32) The Court granted the stipulation and ordered Plaintiff to file a second amended complaint. (Doc. 33) Plaintiff filed such Second Amended Complaint (the "SAC"), which is the operative complaint in this case. (Doc. 34) The parties have met and conferred prior to Defendants filing their Motion but they could not agree on a permissible amendment to cure the alleged deficiencies in the SAC. (Doc. 35 at 3)

## II.   Standard of Review

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Also, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012); *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. Analysis

Plaintiff alleges that on March 24, 2018, she went through the drive-through window of the Chase bank location at 28523 N. El Mirage, Peoria, Arizona 85283 (the "Branch"). (Doc. 34 at 3, ¶ 10) She sought to make two credit card payments and withdraw $1,800.00 from her checking account. (Doc. 34 at 3, ¶ 10) She did not intend to enter the bank and was wearing "her dress that she does not wear in public . . . her hair covered in an African-style head wrap." (Doc. 34 at 3–4, ¶ 10) York presented her Arizona driver's license and Chase Slate credit card to Anliker. (Doc. 34 at 4, ¶ 11) She also filled out a withdrawal form, providing different addresses for the billing and mailing address. (Doc. 34 at 4, ¶ 11) Following an alleged twenty-minute wait, Keller came to the window and asked Plaintiff to come into the Branch to verify her identity. (Doc. 34 at 4, ¶ 12) Plaintiff stated she was not dressed to be in public and Keller assured her that her appearance was fine to enter the Branch. (Doc. 34 at 4, ¶ 12)

Once inside the Branch, Keller waived York over to his desk and asked how he

could be of help. (Doc. 34 at 4, ¶ 13) York repeated what she was there for and Keller transferred money from York's checking account to her credit cards. (Doc. 34 at 4, ¶ 13) Keller informed York that she needed to get her $1,800.00 withdrawal from Anliker. (Doc. 34 at 4, ¶ 13) Anliker was bothered by the identification of York and Keller pulled up and printed York's signature card and gave it to Anliker. (Doc. 34 at 5, ¶ 14) Anliker allegedly made some comments that "she had the right to refuse service" and that York needed to go to another branch. (Doc. 34 at 5–6, 15) York also allegedly leaned on the counter and an object fell, which allegedly prompted Anliker to scream at York and "embarrass" and "humiliate her in the Branch full of customers." (Doc. 34 at 6, ¶ 15) Keller then printed out a copy of York's driver's license and Chase's verification guide and brought it to Anliker. (Doc. 34 at 6, ¶ 16) Keller allegedly apologized for Anliker's behavior, not for the delay, and proceeded to verify Plaintiff's identity at his desk. (Doc. 34 at 6, ¶ 16) Keller informed York that someone had recently fraudulently stolen $4,500.00 from the Branch. (Doc. 34 at 6–7, ¶ 16) Plaintiff alleges that she then felt humiliated, disgusted, and racially profiled after hearing that comment. (Doc. 34 at 7, ¶16) Keller then allegedly apologized again for Anliker's behavior and stated he could not override her. (Doc. 34 at 7, ¶ 17) Anliker finally gave York her money, the process taking more than an hour. (Doc. 34 at 7, ¶ 18)

The SAC contains only one count: a conspiracy by private individuals to violate Plaintiff's civil rights under 42 U.S.C. § 1985(3). (Doc. 34 at 2) The elements of a 1985(3) claim are: "(1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws, (2) an act in furtherance of the conspiracy, and (3) a resulting injury." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). The first element itself contains two parts: a conspiracy and the deprivation of a "legally protected" right motivated by racial or class-based animus. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Because all elements must be satisfied to state a valid claim for relief, Plaintiff has the burden to plead facts which support each element although she is not required to prove those elements at the Rule 12(b)(6) stage.

The Court finds that the SAC fails on the first element of the claim and must be

dismissed. Indeed, to plead a conspiracy, Plaintiff must allege facts which support that the Defendants had "an agreement or meeting of the minds . . . to violate [her] constitutional rights." *Caldeira v. Cnty. Of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989). The SAC contains no allegation which would allow the Court to draw the inference that Anliker and Keller conspired. There is no allegation laying out any fact regarding an agreement between the two of them, any scope of their potential agreement, or how the conspiracy played out. *See Steshenko v. Gayrard*, 70 F. Supp. 2d 1979, 999 (N.D. Cal. 2014) (granting motion to dismiss a 1985(3) claim based on similar reasoning). Plaintiff simply alleges that the actions of the Defendants were the "result of a conspiracy against her." (Doc. 34 at 10–11, ¶ 29) This is the extent of the allegations in the SAC supporting the existence of a conspiracy/agreement between Anliker and Keller. It is true that it is not necessary to allege facts that each participant knew of the exact scope of the plan but there must be more than mere acquiescence: they must at least share the "conspirational objective." *Fonda v. Gray*, 707 F.2d 435, 438–39 (9th Cir. 1983). The SAC is clearly insufficient in this context. Furthermore, some of the allegations in the SAC contradict the existence of a conspiracy between Anliker and Keller. Keller repeatedly apologized for the course of actions taken by Anliker, he tried to help by printing additional document and giving them to Anliker to verify Plaintiff's identity, and Anliker apologized for the delay. (Doc. 34 at 7, ¶¶ 16, 17) Even taking all well-pleaded allegations in favor of Plaintiff, the Court cannot find that it is plausible that Keller and Anliker were engaged in a conspiracy.

The SAC similarly fails on the other elements of a 1985(3) claim. Indeed, the SAC fails to plead any fact showing the existence of a legally protected right which may have been infringed. The SAC alleges Plaintiff was deprived of her constitutional right to "immediate possession of her money," "right to control her money," and "immediate access to her money." (Doc. 34 at 9,10, ¶¶23, 26, 27) The Court has never heard of such rights under the Federal or Arizona Constitutions. The Court cannot infer how the equal protection of the laws is implicated by the allegations in the SAC. At best, the right Plaintiff claims to "immediate possession" would sound in contract, and be covered by the contract

Plaintiff entered into with Chase when she opened bank accounts and a credit card with Chase. The Court already ruled that Plaintiff had not suffered an "actual loss of a contract interest." (Doc. 27 at 7:8) Furthermore, the conspiracy to deprive one of his or her legally protected right must be motivated by racial or class-based animus. *Sever*, 978 F.2d at 1536. In the SAC, Plaintiff broadly alleges she was discriminated against because she is African American and was partially dressed in clothing highlighting her ethnicity. (Doc. 34 at 3–4, ¶ 10; 7, ¶ 16) Plaintiff offers no allegations supporting a racial animus. There is no reference to any racially related comment, or whether the Caucasian customers she refers to were similarly situated. She alleges that the comment Keller made, informing her the bank had recently been defrauded, made her "feel racially profiled." (Doc. 34 at 7, ¶ 16) The Court cannot infer a racial or class-based discriminatory motive from such allegations.

Additionally, as already explained Plaintiff failed to plead enough facts to support a conspiracy and derivatively failed to allege facts showing the Defendants acted in furtherance of such conspiracy. Finally, the SAC fails to plead facts related to an injury necessary under a 1985(3) claim. Her claims that she was "humiliated," "degraded," "disgusted," and "embarrassed" are not enough to satisfy the rule 8 pleading standard on the element of injury. The injury must relate to the legally protected right, which is absent in the SAC already. Accordingly, the Court will grant the Motion.

The Court notes, as a final point, that Plaintiff's counsel apparently believes she must explain to the Court what its duty is and how it should carry such duty. Indeed, Plaintiff's counsel explains that "if the Court does determine that the SAC fails . . . under the standard of Rule 12(b)(6), then the Court should state what deficiency(s) it has found and give the Plaintiff leave to amend to cure the defect(s) unless it is clear that such leave would be futile." (Doc. 38 at 11) The Court is well aware of its duties and will always explain its decisions when necessary and/or mandatory. The Court also strongly admonishes Plaintiff's counsel to refrain from directing the Court on its actions. Plaintiff's counsel should consider spending her time and energy on properly learning the law and the most basic rules of civil procedure. On several occasions, the performance of Plaintiff's

counsel has significantly fallen below the expected standards of practice. This Court is not a law professor, and a civil lawsuit, in federal court, is not an entry level law school class on the basics of civil litigation. It is not the duty of the Court to educate Plaintiff's counsel on how to practice federal civil litigation.

The Court finds that an amendment to the SAC would be futile. Plaintiff has tried three times already and the complaint was deficient each time. The Motion will be granted with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 35) is **granted in full**. The Second Amended Complaint is **dismissed with prejudice** in its entirety.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this action in its entirety.

Dated this 13th day of April, 2020.

Honorable Steven P. Logan
United States District Judge